WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Pinson, | No. CV-13-02059-TUC-BGM |
| Plaintiff, | **ORDER** |
| v. | |
| Unknown Party, et al., | |
| Defendants. | |

Before the Court is Defendant Federal Bureau of Prisons' Motion for Summary Judgment. (Doc. 215.) The motion has been fully briefed. (Docs. 231, 235.) For the reasons that follow, Defendant's motion is granted, and the case is dismissed.

## BACKGROUND[1]

Since 2006, Plaintiff Jeremy Pinson has been incarcerated with the Federal Bureau of Prisons (the "Bureau") and housed at various institutions throughout the country. (Docs. 216, ¶¶ 2-4; 216-1 at 7-14.) From February 2011 through October 2014, Pinson was intermittently housed at the administrative security facility in Florence, Colorado ("ADX"). (Doc. 216-1 at 11.[2]) While housed at ADX, Pinson met fellow inmates, Charles Harris, Richard McBee, and Erwin Villatoro. (Doc. 232-1, ¶ 2.) Pinson also met Bureau

---

[1] The facts in the background section are stated in the light most favorable to Pinson as the nonmoving party. *Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir. 2002).

[2] The Court draws the reasonable inference that the administrative maximum security facility in Florence, Colorado, is designated as "FLM" on the Inmate History worksheet. (*See* Doc. 216, ¶ 4.)

Special Investigative Lieutenant Charles Alvarez. (*Id*. ¶ 4.) Pinson again encountered Alvarez while housed at the United States Penitentiary in Florence, Colorado ("USP-Florence").[3] (*Id*.) Pinson met fellow inmate Christopher Coates while she was housed at the Medical Center for Federal Prisoners in Springfield, Missouri ("SPG"), and was subsequently housed with Coates at USP-Florence.[4] (*Id*. ¶ 3.)

Pinson traces Harris, McBee, Villatoro, Coates, and Lieutenant Alvarez back to the United States Penitentiary in Tucson, Arizona ("USP-Tucson"), where she alleges that in 2010, Alvarez and another Bureau official paid the inmates to spread rumors that she was a snitch. (*See* Doc. 16 at 3.) Pinson also alleges that the Bureau officials showed the inmates "documents verifying my cooperation with law enforcement[,] which are not publicly available and which could only be accessed by [Bureau] employees from files maintained by the [Department] of Justice and its agencies." (*Id*. at 5.) Pinson adds that she did not authorize the release of this information. (*Id*.)

Pinson asserts that Harris, McBee, Villatoro, and Coates all informed her that Bureau officials had told them about, or "revealed," confidential documents in Pinson's inmate file that identified her as a cooperating informant. (Doc. 232-1, ¶¶ 8-10, 12, 16.) Pinson also asserts that in 2013, an inmate who assaulted her with feces at ADX informed her that he did so because USP-Tucson inmates told him of the documents in Pinson's file. (*Id*. ¶ 7.) Pinson explains that another federal prisoner, Gary Lee Long, provided her with a declaration while he was confined at USP-Tucson. (*Id*. ¶ 13.) Long's declaration states that while he was previously confined at the facility, Alvarez and another official were responsible for the "dissemination of negative information identifying inmate Pinson as a snitch." (Doc. 232-1 at 12.) Long asserts that the Bureau officials "made such statements to myself and in my presence to other unknown named inmates." (*Id*. ¶ 4.)

---

[3] The Court infers that Pinson is referring to USP-Florence when she uses the term "U.S. Penitentiary High in Florence, CO." (*See* Doc. 232-1, ¶¶ 1, 3-4, 14.) USP-Florence is the only high-security federal prison in Florence, Colorado. Federal Bureau of Prisons - List of Facilities, https://www.bop.gov/locations/list.jsp (last visited Sept. 11, 2024).

[4] Pinson is transgender and uses female pronouns. (*See* Doc. 215, n.1 at 2.)

Finally, Pinson proclaims that in 2016, she personally met with Alvarez and asked him why he had revealed her private information to other inmates. (Doc. 232-1, ¶ 14 at 6.) According to Pinson, Alvarez admitted that he and another Bureau official were motivated by Pinson's negative stories about the Bureau in a prison publication and shared her information to discredit her among the prison population. (*Id.*) Pinson asserts that Alvarez ended the conversation by assuring her that the system would protect him because he is a federal agent and she is an inmate. (*Id.*) Pinson also proclaims that Bureau staff regularly share information with their counterparts in other institutions if both departments share a common intelligence gathering target such as a gang or a prisoner-centered publication. (*Id.* ¶ 15.) Pinson seeks compensatory and punitive damages, injunctive relief, and costs for the alleged violation of her rights under the Privacy Act. (*See* Doc. 16 at 6.)

## PROCEDURAL HISTORY

On November 5, 2014, Pinson filed her first amended complaint in this action. (Doc. 16.) In the first amended complaint, Pinson raised two constitutional *Bivens* claims and a Privacy Act claim. (*Id.* at 3-5.)

Upon screening, the Court misconstrued Pinson's Privacy Act claim as a *Bivens* claim, dismissed the Bureau, and allowed Pinson's *Bivens* claims to proceed. (Doc. 18.)

On September 6, 2016, the Court granted summary judgment in favor of the individual Bureau defendants and closed the case. (Doc. 66.) Pinson appealed. (Doc. 68.)

On October 4, 2017, the United States Court of Appeals for the Ninth Circuit reversed judgment on one of Pinson's *Bivens* claims and instructed the Court to consider her Privacy Act claim in the first instance on remand. (Doc. 76-1 at 1-3.)

On May 30, 2018, the Court reinstated Pinson's Privacy Act claim ruling that she sufficiently stated a claim under 5 U.S.C. §§ 552a(b) and 552a(g)(1)(D). (Doc. 80 at 4-5.)

On May 3, 2019, a new case management schedule on the claim, which allowed limited discovery and included a dispositive motion schedule, was issued. (Doc. 105)

On November 15, 2019, the Bureau indicated that it would not be filing a summary judgment motion on Pinson's Privacy Act claim. (Doc. 124 at 2.)

On March 12, 2020, the Court ruled that no further discovery would be permitted and that it would appoint pro bono counsel to assist Pinson at trial. (Doc. 136.)

On November 3, 2020, the Court appointed pro bono counsel and indicated that it would allow limited discovery for the fair presentation of the case at trial. (Doc. 150.)

On April 27, 2021, the Court granted Pinson's request for additional time to file trial-related motions or engage in settlement discussions with the Bureau. (Doc. 157.)

From January 10, 2022, until April 4, 2024, the parties were engaged in various stages of settlement discussions. (*See* Docs. 163, 219.)

On February 28, 2022, upon consent of the parties, the Court transferred the case to the undersigned Magistrate Judge for the purpose of conducting trial. (Doc. 165.)

On August 4, 2022, the Court granted the Bureau's unopposed request for leave to file an *Egbert* motion on Pinson's remaining *Bivens* claim. (Doc. 179.)

On February 9, 2023, the Court dismissed Pinson's *Bivens* claim based on Pinson's concession that *Egbert* precluded relief on the claim. (Doc. 189.)

On November 2, 2023, the parties requested the reopening of discovery, an amended dispositive motion deadline, and resetting of the pending trial date. (Doc. 205 at 1-2.)

On November 9, 2023, the Court reopened discovery, issued an amended dispositive motion briefing schedule, and set a new trial date. (Doc. 208.)

On April 5, 2024, the Bureau filed its motion for summary judgment. (Doc. 215.)

On June 6, 2024, Pinson's appointed counsel withdrew from the case, and Pinson was permitted to proceed pro se. (Doc. 230.)

On July 9, 2024, Pinson filed her summary judgment response, (Doc. 231); and on July 22, 2024, the Bureau filed its reply, (Doc. 235.)

This Order follows.

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

movant bears the initial responsibility of providing the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party;" and material facts are facts "that might affect the outcome of the suit" under law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, a district court's function is not to weigh the evidence or make credibility determinations, but to determine whether there is a genuine issue for trial. *Id*. at 255. The court must believe the nonmovant's evidence and draw all justifiable inferences in her favor. *Id*. However, if the moving party "meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact …. the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *specific facts* showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (cleaned up). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Summary judgment is appropriate when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

The Bureau brings its summary judgment motion asserting that it is entitled to judgment as a matter of law because Pinson fails to establish the necessary elements of a Privacy Act violation under 5 U.S.C. § 552a(g)(1)(D). (Doc. 215 at 7-13.) It specifically argues that: (i) Pinson's central inmate file is exempt from the Act; (ii) Pinson fails to demonstrate that Bureau officials disclosed information from her inmate file; (iii) Pinson fails to demonstrate that the alleged disclosure caused an adverse effect; and (iv) Pinson fails to demonstrate that she suffered actual damages as a result of the alleged disclosure.

(*Id*. at 7-13.)  In granting summary judgment in the Bureau's favor, the Court addresses its first and last arguments.

I.  **Disclosure of Inmate Record Information Not Exempt from Act**

The Bureau first asserts that it is entitled to judgment as a matter of law because its entire Inmate Central Records System ("ICRS") is exempt from the Privacy Act.  (Doc. 215 at 7-8.)  The Bureau extrapolates that since the Department of Justice exempts the ICRS from the civil remedies provision of the Act, Pinson has no cause of action for the unlawful disclosure of information within the system.  (*Id*. at 8.)  The Court disagrees.

The Privacy Act of 1974, codified in part at 5 U.S.C. § 552a, was designed to "protect the privacy of individuals through regulation of the collection, maintenance, use, and dissemination of information by federal agencies."  *Rouse v. U.S. Dep't of State*, 567 F.3d 408, 413 (9th Cir. 2009) (cleaned up).  It provides agencies with "detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements" of the Act.  *Doe v. Chao*, 540 U.S. 614, 618 (2004).  The Act expressly prohibits agencies from disclosing "any record ... contained in a system of records by any means of communication to any person" without the subject's permission. *Hurt v. D.C. Ct. Servs. & Offender Supervision Agency*, 827 F. Supp. 2d 16, 20 (D.D.C. 2011) (quoting 5 U.S.C. § 552a(b)).

The civil remedies provision of the Act, codified at subsection 552a(g)(1), "links particular violations of the Act to particular remedies in a specific and detailed manner." *Cell Assocs., Inc. v. Nat'l Insts. of Health, Dep't of Health, Ed. & Welfare*, 579 F.2d 1155, 1158 (9th Cir. 1978).  Subsection 552a(g)(1) "lists four types of agency misconduct that give rise to civil remedies and it then states the civil remedies applicable to each." *Id.*  Pinson claims that the Bureau failed to comply with the nondisclosure provision of the Act, which is codified at subsection 552a(b).  (*See* Doc. 231 at 12.)  If an agency violates the Act's nondisclosure provision, the plaintiff's claim falls under the Act's "catch-all" provision, which is codified at subsection 552a(g)(1)(D). *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.D.C. 2007).  Subsection 552a(g)(1)(D) links to the civil remedy

provision codified at 552a(g)(4). *Cell Assocs.*, 579 F.2d at 1159. Subsection 552a(g)(4) provides for "damages, costs, and attorney fees, where the agency acted in a manner that was intentional or willful." *Id.*; 5 U.S.C. § 552a(g)(4).

While the Act provides remedies for four categories of violations of an individual's privacy rights, it also allows certain agencies to "promulgate regulations exempting themselves from provisions of the Act." *Fendler v. U.S. Bureau of Prisons*, 846 F.2d 550, 553 (9th Cir. 1988) (citing 5 U.S.C. § 552a(j)). Relevant to the issue here, the Department of Justice has promulgated regulations exempting the Bureau's ICRS from certain provisions of the Act. *Id.* Specifically, 28 C.F.R. § 16.97(j) (2013) exempts the system of records from subsections 552a(c)(3) and (4); (d); (e)(1), (2), (3), (4)(G), (H), and (I), (5), (8); (f); and (g). However, the regulation *does not exempt* the system from the Act's nondisclosure provision, which is codified at subsection 552a(b). *See* 28 C.F.R. § 16.97(j).

Additionally, the Act itself expressly precludes an agency from exempting its records from the nondisclosure provision of the Act. *See* 5 U.S.C. § 552a(j) ("The head of any agency may promulgate rules … to exempt any system of records within the agency from any part of this section except subsection[ ] (b)"). Since the Act precludes any agency from exempting its systems of records from the Act's nondisclosure provision, and the Bureau's own regulation does the same, the Bureau cannot circumvent the Act's preclusion by exempting its system from the civil remedy provisions of the Act. *See Fendler*, 846 F.2d at 554 (concluding that the Bureau cannot invoke its own regulation to impliedly exempt itself from liability of a non-exemptible substantive provision of the Act).

The Bureau argues, nonetheless, that it is not liable for any violation of the Act's nondisclosure provision because regulation 16.97(j) exempts its ICRS from the civil remedy provision of the Act. (Doc. 215 at 7.) The Bureau concludes that since the ICRS is exempt from the civil remedy provision of the Act, the system must also be exempt from the Act's substantive provisions as well. (*Id.* at 8.) As discussed above, this argument is unavailing, and the case law the Bureau identifies to support its argument is clearly distinguishable from the issue at hand. *See Lynn v. Lappin*, 593 F. Supp. 2d 104, 107

(D.D.C. 2009) (emphasis added) (cleaned up) (dismissing Privacy Act claim because the DOJ properly exempted the Bureau's ICRS "entirely from the *access* and *amendment* requirements of 5 U.S.C. § 552a(d)"); *Brown v. Fed. Bureau of Prisons*, 602 F. Supp. 2d 173, 175 (D.D.C. 2009) (cleaned up) (emphasis added) (dismissing Privacy Act maintenance claim and ruling that "an individual cannot sue the [Bureau] for damages under the Privacy Act for information *not maintained* or *incorrectly maintained* in the BOP's Inmate Central Records System."); *Alexander v. United States*, 787 F.2d 1349, 1351 (9th Cir. 1986) (summarily affirming dismissal of Privacy Act *maintenance* claim because DOJ exempted FBI's system of records from subsection 552a(g) pursuant to 28 C.F.R. § 16.96(e)); *Scaff-Martinez v. Fed. Bureau of Prisons*, 160 F. App'x 955, 956 (11th Cir. 2005) (affirming dismissal of prisoner's claims against the Bureau for (i) failure *to maintain accurate* records; (ii) *expungement of false information* from file; and (iii) *amendment* of inaccurate file under 5 U.S.C. §§ 552a(d) and 552a(e)(5)).

More importantly, the United States Court of Appeals for the Ninth Circuit squarely rejected an analogous argument raised by the Bureau over three decades ago. In *Fendler v. United States Bureau of Prisons*, 846 F.2d 550 (9th Cir. 1988), the Bureau tried, and failed, to use a nearly identical argument to exempt its system of records from a different provision of the Act. *Id*. at 553-54. There, the Bureau had created an internal file on a prisoner which included an allegedly inaccurate presentence report. *Id*. The Bureau then provided a copy of the file to the parole commission for a release date determination. *Id.* The prisoner filed suit alleging that the Bureau violated the Act by failing to correct the inaccurate report and other internally generated documents. *Id*. The prisoner also alleged that the commission set a release date later than what was warranted because the commission relied on the Bureau's inaccurate information. *Id.*

Like here, the Bureau argued that it was not liable for a substantive violation of the Act because its own federal guidance exempted it from the civil remedies provision of the statute. *See id*. at 553 (labeling the Bureau's challenge to subsection (g)(1) as an attack on the Act's "enforcement provision"). The Ninth Circuit rejected this argument, ruling:

- 8 -

> Clearly each subsection of (g)(1) enforces a separate substantive provision of section 552a. The [Bureau] would have us read its exemption from "subsection (g)" literally, to encompass each of subsections (g)(1)(A), (g)(1)(B), and (g)(1)(C) …. [W]e cannot give the exemption this reading.
>
> The Privacy Act sets forth certain requirements which agencies must satisfy if they wish to exempt themselves from the provisions of the Act. In order for an agency to exempt itself from the provisions of the Privacy Act, it must follow the procedure set forth in 5 U.S.C. § 552a(j). According to section 552a(j), an agency can exempt certain record systems from section 552a's requirements by promulgating regulations, as the Bureau of Prisons has done. Subsection (j) also mandates, though, that the agency state its reasons for exempting the records when it adopts the regulation. It is this latter requirement which prevents the Bureau of Prisons from relying on regulation 16.97(a) to impliedly exempt itself from subsection (e)(5) in this case.
>
> The Bureau of Prisons *has* set forth a justification for exempting an agency from subsection (g) in regulation 16.97(b)(9). 28 C.F.R. § 16.97(b)(9) explains that exemption from subsection (g) is justified "because exemption from provisions of subsection (d) will render provisions of this subsection inapplicable." The Bureau of Prisons' reason for exempting itself from subsection (g), then, has nothing to do with enforcement of subsection (e)(5), nor with subsection (g)(1)(C), (e)(5)'s enforcement provision. Rather, the exemption from subsection (g) can only be understood as applying to subsections (g)(1)(A) and (g)(1)(B), the enforcement provisions for subsection (d). In light of the Bureau of Prisons' clearly expressed justification for exemption from subsection (g), we cannot find that the Bureau of Prisons intended any implied exemption from subsection (e)(5). ….
>
> … Thus we conclude that the Bureau of Prisons cannot escape liability by relying on the exemptions provided for in regulation 16.97.

*Id*. at 553-54 (internal citations omitted).

Review of the regulation at issue here, 28 C.F.R. § 16.97(j), indicates that the ICRS is exempt from the civil remedy provision of the Act "only to the extent that information in this system is subject to exemption [under] 5 U.S.C. 552a (j)(2) and/or (k)(2)." 28 C.F.R. § 16.97(k). That is to say that the civil remedy exemption only applies to those provisions *already exempt* from the Act under subsections 552a(j) and/or 552a(k). As the Court previously noted, *see* supra p. 7, subsection 552a(j) precludes an agency from exempting

- 9 -

its systems of records from the nondisclosure provision of the Act. Because the Bureau fails to adequately support its implied exemption assertion, and due to the fact that the Ninth Circuit has flatly rejected an analogous argument, the Court concludes that Pinson maintains a cognizable cause of action for the alleged unlawful disclosure of information contained in the Bureau's ICRS, and the Bureau's argument is denied.

## II.     Pinson Fails to Establish Actual Damages

While the Court concludes that Pinson maintains a cause of action under the Privacy Act for the unlawful disclosure of records from her inmate file, it agrees with the Bureau that Pinson fails to establish actual damages in the form of pecuniary or economic harm from the alleged violation of the Act. (*See* Docs. 215 at 12-13; 235 at 11.) Pinson's failure to establish an essential element of her claim is dispositive of this case because Pinson "fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322. As such, the Bureau's summary judgment motion is granted, and the case is dismissed.

To survive summary judgment, a plaintiff seeking relief under the nondisclosure provision of the Privacy Act must establish that: (i) "the information is covered by the Act as a 'record' contained in a 'system of records';" (ii) "the agency disclosed the information improperly;" (iii) "the disclosure had an adverse effect on the plaintiff;" (iv) "the disclosure was willful or intentional;" and (v) "the plaintiff suffered actual damages." *Haiping Su v. Nat'l Aeronautics & Space Admin.*, No. 5:09-CV-02838, 2013 WL 1663608, at *4 (N.D. Cal. Apr. 17, 2013) (citing *Stafford v. Social Sec. Admin.*, 437 F. Supp. 2d 1113, 1117 (N.D. Cal. 2006)); *cf. Rose v. United States*, 905 F.2d 1257, 1259 (9th Cir. 1990) (ruling that subsection (g)(1)(C) of the Act is "violated when the plaintiff shows 1) that the government failed to fulfill its record keeping obligation, 2) which failure proximately caused the adverse determination, 3) that the agency failed intentionally or willfully to maintain the records, and 4) that the plaintiff suffered actual damages.").

The Supreme Court has adopted an interpretation of "actual damages" under the Privacy Act that is limited to "proven pecuniary or economic harm." *F.A.A. v. Cooper*,

1  566 U.S. 284, 300 (2012).  The Court's ruling forecloses recovery for nonpecuniary harm,
2  "even if such harm can be proved[;]" and damages in the form of mental and emotional
3  distress, reputational harm, shame, mortification, and injury to feelings fail to qualify for
4  relief under the Act.  *Id*. at 301; *see also Haiping Su*, 2013 WL 1663608, at *4.  Under the
5  Act, a federal agency's liability is limited "to harm that can be substantiated by proof of
6  tangible economic loss."  *Cooper*, 566 U.S. at 303.

7  Here, Plaintiff fails to argue, much less demonstrate, that she suffered tangible economic loss as a result of the Bureau's alleged unlawful dissemination of information that was located in her inmate file.  (*See* Docs. 231-32.)  Plaintiff only alludes to damages in the form of reputational harm and a subsequent assault on her with feces by another inmate.  (*See* Doc. 16 at 3 ("I was labeled a snitch nationwide and in late 2013 was assaulted with feces by an irate prisoner").)  While these damages may afford Pinson relief for constitutional *Bivens* claims, *see Pinson v. Unknown Party*, 698 F. App'x 445, 446 (9th Cir. 2017) (reiterating that labeling a prisoner a snitch may violate the prisoner's right to be protected from violence while in custody), they are insufficient to survive summary judgment on a Privacy Act claim, *see Glass v. U.S. Dep't of Just.*, 279 F. Supp. 3d 279, 281 (D.D.C. 2017) (cleaned up) (concluding that a plaintiff's "vague description of the harms allegedly sustained as a result of [an agency's] disclosure cannot support a demand for actual damages that must be limited to *proven* pecuniary or economic harm").  While the record confirms that Pinson was assaulted with feces in 2013, it also demonstrates that she was evaluated by a medical provider the same day, she failed to suffer any physical injuries from the assault, and she was provided with clean clothes and shower supplies free of charge.  (*See* Doc. 139 at 12, 16, 35-36.)  Accordingly, Pinson fails to establish actual damages for the alleged unlawful disclosure of records within her inmate file, and the Bureau's summary judgment motion is granted.

## CONCLUSION

Plaintiff Jeremy Pinson filed this action over a decade ago alleging constitutional *Bivens* claims and a violation of the Privacy Act.  Pinson's *Bivens* claims were ultimately

dismissed, and the Court was left to decide her Privacy Act claim under 5 U.S.C. § 552a(b). After briefing on the claim, the Court concludes that while Pinson maintains a cause of action for a violation of the nondisclosure provision of the Act, she fails to establish that she suffered actual damages as a result of the alleged violation. Accordingly, the Bureau of Prison's summary judgment motion is granted, and the case is dismissed.

Dated this 16th day of September, 2024.

Honorable Bruce G. Macdonald
United States Magistrate Judge